Christine Bennett
719 Jadwin
Richland, WA 99352
509-378-6978
christinebennettlaw@gmail.com

Attorney for Defendant
Vicky Villalobos

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. VICKY VILLALOBOS, Defendant. | Case No.: 4:24-cr-06018-MKD<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>Sentencing Hearing<br>September 24, 2026 at 9:30AM |

TO: REBECCA PEREZ AND BRANDON PANG, UNITED STATES ATTORNEYS; CLERK OF COURT

**COMES NOW** Vicky Villalobos, by and through her appointed attorney of record, Christine Bennett, and hereby files this Sentencing Memorandum. For the reasons stated below, Ms. Villalobos hereby requests a 60-month sentence of imprisonment.

**1. Offense Level and Criminal History**

Ms. Villalobos agrees with the guideline calculation contained in the draft Presentence Investigation Report. ECF 175. Specifically, Ms. Villalobos agrees that the guideline calculation is as follows:

Base offense level: 34

Special Offense Characteristics (firearm and leader): +4

Acceptance of responsibility: -3

Adjusted offense level: 35

Ms. Villalobos has a Criminal History Category of II. The resulting range is 188 to 235 months.

**2. Departures**

No departures are being requested.

**3. 18 U.S. Code § 3553(a)**

**a. <u>Nature and Circumstances of the Offense - 18 U.S. Code § 3553(a)(1).</u>**


Christine Bennett, Attorney at Law
719 Jadwin Richland WA 99352
509-378-6978

Ms. Villalobos fully accepts responsibility for engaging in drug trafficking as outlined in her plea agreement. [ECF 157.] However, she respectfully notes that many of the statements made by the confidential informant, her former friend of approximately 30 years, are not accurate. For example, Ms. Villalobos states she was told by an investigating officer who searched her house that the confidential source alleged that she would have a much higher quantity of drugs at her residence as well as significantly more money than was found and that it would be hidden in the walls of her residence. Ms. Villalobos believes that the confidential informant suffers from mental health disorders that may have affected his perceptions.

Although Ms. Villalobos admits to regularly engaging in drug trafficking, she denies that she trafficked in the high quantities alleged by the confidential informant. In particular, she denies that she trafficked in drugs worth $20,000 to $50,000 per month. [ECF No. 217 and No. 175 at ¶ 14].

Ms. Villalobos notes that she lived a modest life inconsistent with the level of drug trafficking alleged by the confidential informant. She lived with a platonic roommate in a two-bedroom, 938-quare-foot home (pictured below).





Christine Bennett, Attorney at Law
719 Jadwin Richland WA 99352
509-378-6978



She estimates that she has approximately $30,000 in credit card debt. She respectfully submits that these circumstances provide additional context regarding the nature of her finances, as well as and the reliability of allegations made by the confidential informant.

Consistent with this picture of Ms. Villalobos's life, the numerous letters of support submitted by her friends and family reflect the surprise and disbelief of those who knew her best upon learning of her arrest and drug trafficking. Although they were aware of her similar conviction from approximately 20 years ago, those closest to Ms. Villalobos were shocked to learn that she had returned to trafficking drugs. They knew her to be a humble and kind-hearted woman who was a charitable and very social and involved member of her community. Exhibit A, *Letters of Support*.

Ms. Villalobos is deeply remorseful for the choices she made. During the more than two years she has spent in custody since her arrest, she has used her time to educate herself about the devastating impact of drugs on those around her, including her fellow inmates. She has reflected seriously on her conduct and the harm it has caused, and she is committed to making better choices moving forward. Exhibit B, *Apology Letter*.



Christine Bennett, Attorney at Law
719 Jadwin Richland WA 99352
509-378-6978

**b. History and Offender Characteristics -- 18 U.S. Code § 3553(a)(1).**

Ms. Villalobos, now age 50, grew up on a large, state-sponsored migrant worker's community. [ECF No. 175 at ¶ 147]. Her father was an alcoholic and drug addict who often struggled with unemployment. [ECF No. 175 at ¶ 148]. When Ms. Villalobos was approximately 8 years old, she witnessed one of many men her father brought into their home tie a plastic tube around his arm, hold it in place with his teeth, and inject himself with a needle. Even at that young age, Ms. Villalobos knew that the man was injecting with a deadly and addictive substance. She had also seen numerous people open the small squares of tinfoil that her father provided to them. Ms. Villalobos also recalls being present when her mother reported her father to the authorities. Shortly thereafter, a SWAT team raided their home. At eight years old, she remembers being pushed to the floor during the raid. At age 12, Ms. Villalobos witnessed her father suffer from an overdose. She vividly remembers the look on his face as her mother attempted to help him. She recalls her mother placing him in the shower while he was still wearing a jean jacket and pants. She remembers watching his eyes roll as her mother repeatedly called his name. These experiences exposed Ms. Villalobos to drugs from an exceptionally young age, making such a conduct a disturbing and deeply familiar part of her childhood environment.



Christine Bennett, Attorney at Law
719 Jadwin Richland WA 99352
509-378-6978

That same year, Ms. Villalobos also witnessed an automobile accent that resulted in the gruesome death of a neighbor. Ms. Villalobos also recalls an incident from her childhood in which her father became enraged because he believed the television was "too loud." He chased her through the house and, when she attempted to hide under blanket, kicked her with full force. She recalls being thrown "off the floor" by the force of the kick. She also recalls that her mother would often take her and her siblings to Mexico in an effort to escape their father's abuse. Ms. Villalobos was also regularly sexually abused by a teenage relative during trips to Mexico, unbeknownst to her mother. [ECF No. 175 at ¶ 150]. The sexual abuse was a recuring part of her childhood from approximate ages five through eight. While in Tijuana, Ms. Villalobos experienced additional trauma when she learned that a massacre had occurred at a location she frequently visited with her mother. She remembers feeling fortunate that she had not been there that day, as she often was, and was deeply affected by the realization that she could easily have been present when the violence occurred. These are just some of the many frightening experiences that contributed to the instability and trauma of her childhood.

By age 14, Ms. Villalobos had developed an addiction to hard alcohol. [ECF No. 175 at ¶ 162]. She recalls working at a taco shop on the property of an autobody shop to earn money. Every day, the owner of the autobody shop would give her liquor in



Christine Bennett, Attorney at Law
719 Jadwin Richland WA 99352
509-378-6978

exchange for soda. Her addiction to alcohol became so severe that she would hide alcohol under her bed. At age 16, she fell under the influence of a gang which provided her with drugs and alcohol. [ECF No. 175 at ¶ 151].

As a young adult, Ms. Villalobos worked as a caregiver assisting individuals with disabilities. [ECF No. 175 at ¶¶ 167 - 168]. She lost that career path following her arrest for drug trafficking, after which she served a 72-month federal sentence in Oregon. [ECF No. 175 at ¶ 112]. While serving that sentence, Ms. Villalobos reports that she was sexually abused by a prison guard. [ECF No. 175 at ¶ 153]. The experience was extremely traumatic for her and continues to contribute to her fear and distress regarding the prospect of returning to federal custody.

After finishing her sentence, in 2015 she worked for a party supply business but suffered a work-related injury and could no longer engage in hard physical labor that job required and she was granted social security benefits. [ECF No. 175 at ¶ 168].

c. **The Need for the Sentence Imposed to Provide the Defendant with Medical Care in the Most Effective Manner - 18 U.S. Code § 3553(a)(2)(D).**



Christine Bennett, Attorney at Law
719 Jadwin Richland WA 99352
509-378-6978

In 2001, Ms. Villalobos states she had surgery after being diagnosed with uterine cancer. [ECF No. 175 at ¶ 158]. Additionally, her 2024 medical records from the Walla Walla Clinic confirm that she has a history of colonic malignant polyps.

> symptoms of STDs. Can go about her day, however will have random pains in the low abdomen and pelvis. Has history of endometriosis, however has no menses with Mirena IUD in place. Reports possible menopause based on reported labs done with PCP. On exam there is pain of the cervix and uterus. No other pains noted. IUD strings appear longer then usual. Possible malposition of IUD in the LUS or cervix. Will obtain pelvic US to evaluate IUD position and any other source of pain. Will make further management planning based on results. All questions answered.
>
> She has history of malignant colonic polyp and gets screening every 3-5 years.
> She has HTN and A&D managed by PCP and controlled with medications.
> OBGYN: G0, Menarche age 12, irregular menses, h/o HMB and painful menses, long use of IUD. H/o abnormal pap and HPV, repeat pap collected today.
> PMH: A&D, HTN, Endometriosis,
> PSH: Cholecystectomy, Hip surgery, Shoulder surgery, Cervical cryotherapy
> FAM: Mom had breast cancer in 60s

Exhibit C, Medical Records

According to medical records from Kadlec (below), Ms. Villalobos has a family history of cancer.

Family History

| Problem | Relation | Age of Onset |
|---|---|---|
| • Breast cancer | Mother | 63 |
| • High blood pressure | Father | |
| • Hepatitis C | Father | |
| • Cancer | Father | |
| • Stomach cancer | Maternal Grandmother | |
| • Aneurysm | Paternal Grandfather | |
| • Sleep apnea | Sister | |
| • Breast cancer | Maternal Aunt | 60 |

Exhibit C, Medical Records

Ms. Villalobos was recently diagnosed with adenomyosis and has been experiencing chronic abdominal pain. She has been advised that a hysterectomy would be an appropriate treatment option and would likely alleviate her chronic abdominal pain.



Christine Bennett, Attorney at Law
719 Jadwin Richland WA 99352
509-378-6978

12-04-2024 10:48 PSJH_EPIC 7/7

KADLEC CLINIC ASSOCIATED PHYSICIANS FOR WOMEN
945 GOETHALS STE 200
RICHLAND WA 99352-3527

Villalobos, Vicky
MRN: 60001621849, DOB: Legal Sex: F
Visit date: 11/27/2024

**11/27/2024 - Office Visit in KADLEC CLINIC ASSOCIATED PHYSICIANS FOR WOMEN (continued)**

**Progress Notes - Pert (continued)**

**Adenomyosis**
- Discussed the etiology, symptoms and prognosis of adenomyosis.
- Discussed the risks and benefits of treatment options, including NSAIDs, OCPs, Depo Provera, Nexplanon, Mirena IUD, and Depo Lupron or gold standard hysterectomy.
- The patient prefers pt prefers hysterectomy.
- Will sign ROI for labs, pap smear, STI testing done at Walla Walla Clinic
- Pt will sign ROI for ultrasound from Inland Imaging

Exhibit C, Medical Records

Given her family history cancer and chronic pain, she views a hysterectomy as her best option for addressing her conditions.

Following her 2015 workplace injury, she also has also experienced chronic pain related to a spinal injury. In 2023, her treatment provider from the Apex Spine Institute advised her that surgery may be appropriate due to her back injury and related facet arthropathy at L5-S1.

**Surgical History**
None

**Family History**
Family history of breast cancer gene mutation in first degree relative (situation)
- Mother

Family history of cirrhosis of liver (situation)
- Father

Family history: Hypertension (situation)

**Impression/Plan:**
1. **Low Back Pain**
**Vertebrogenic low back pain (M54.51)**
Associated diagnoses: Low Back Sprain, Sacroiliitis, and Sacroiliac Pain

**Plan: Additional Notes.**
(Patient Management Risk Level: Moderate)

Patient Specific Notes: Assessment
1. Right SI joint pain with mild to moderate symmetric arthritis of both sacroiliac joints
2. Right hip trochanteric bursitis
3. Bilateral hip arthrosis, status post right hip surgery done at an outside facility

Plan: We are still recommending that she go to the University of Washington for second opinion. As noted, she had a court date with her lawyer, and they told her that they will make a decision regarding her surgery in June 2024.
As noted, her injury was in 2015, and she is still having pain. If she has to wait until June of next year before they can make a decision regarding the surgery, I would recommend that she be seen for pain management by Dennis or Desiree Ang to get some relief from her symptoms. I would like to have her follow-up with me in 1 month.

VILLALOBOS, VICKY 580234 (202400004368) (509) 606-5040 Work
Apex Spine Clinic
821 Swift Blvd
Richland, WA 99352-3513
Page 1

Exhibit C, Medical Records

Ms. Villalobos states she has been informed that she cannot receive either of these procedures because they have been deemed elective and not medically necessary. She is also concerned that her future medical treatment may be determined, at least in part, by





Christine Bennett, Attorney at Law
719 Jadwin Richland WA 99352
509-378-6978

non-medical professionals while in the custody of the Bureau of Prisons. Her concerns have been heightened by a specific miscommunication she recently experienced with the U.S. Marshals.[1]

In early May of this year, Ms. Villalobos was transferred from the Benton County jail to the Yakima County jail. Since her transfer, Ms. Villalobos reports that she has

---

[1] In July of 2025 Ms. Villalobos filed a Motion for Furlough, in part to have her IUD removed. [ECF 160, page 1, line 18.]. It had been prescribed years prior as treatment for heavy menstruation. The removal procedure was overdue. She also requested an ultrasound. Prior to filing the Motion, she states that a medical professional at the jail had told her that the U.S. Marshals denied both requests. At her furlough hearing, she was surprised when she was informed that, at some point prior to the hearing, the Marshals told the Court that her IUD had *already* been removed. Fortunately, shortly thereafter—without explanation for the reversal—Ms. Villalobos was permitted to have her IUD removed and an ultrasound performed.

Linda Gruenwald NP POSTED ON 8/7/2025 5:11:24 PM PDT Type: MEDICAL

Ultrasound will be approved after she has the IUD removed.

Linda Gruenwald NP POSTED ON 8/7/2025 5:10:50 PM PDT Type: MEDICAL

Notification sent to patient regarding replacement of Mirena. This has been denied. She is authorized for removal only.

Exhibit C, Medical Records

received more consistent and comprehensive medical care and, to her great appreciation, has been treated with dignity and respect. Shortly after her transfer, she underwent bloodwork and was informed by the jail medical staff that she may have diabetes after her blood glucose level measured 172 mg/dL.

*Laboratory Request/Medical-Necessity Note – Hemoglobin A1c*
*Recent laboratory testing demonstrated an elevated serum glucose of 172 mg/dL. The specimen was nonfasting; however, the glucose remains sufficiently elevated to warrant additional evaluation for possible diabetes mellitus or prediabetes. No established diagnosis of diabetes is documented in the available encounter information.*
*Laboratory requested: Hemoglobin A1c*
*Clinical purpose: To assess average glycemic control over the preceding approximately 2–3 months and determine whether further evaluation or treatment is indicated.*
*ICD-10-CM: R73.9 – Hyperglycemia, unspecified*
*CPT: 83036 – Hemoglobin A1c*

Exhibit C, *Medical*

Ms. Villalobos reports that her abdominal pain has worsened, her menstrual bleeding has increased dramatically, including the passage of large blood clots. She has also experienced painful urination and recently has noticed a lump her left armpit. She is now scheduled for an appointment to have the lump evaluated, as well as a mammogram and an appointment with a specialist address her adenomyosis. She is also scheduled for follow-up care concerning her esophageal stricture.

**Medical**

| **Speciality** | **Service** | **Other Service Requested** |
| --- | --- | --- |
| Gastroenterology | Other (explain in remarks) | Pt is needing a follow up with GI after a failed Esophogram |

Exhibit C, *Medical Records*



Christine Bennett, Attorney at Law
719 Jadwin Richland WA 99352
509-378-6978

*ultrasound of the left axilla to characterize the palpable abnormality and evaluate for lymphadenopathy, cystic or solid lesion, or other soft-tissue pathology*

Additional Information (including interim actions taken):

*Newly identified palpable lump in the left axilla. Patient first noticed the finding approximately two days ago during self-examination and is uncertain how long it has been present. The area was initially painful but is currently non-tender. Patient reports a maternal history of breast cancer.*

*Pertinent examination findings:*

*Firm, fixed, smooth, non-tender left axillary lump approximately the size of a peach seed.*

Exhibit C, *Medical Records*

Ms. Villalobos is deeply concerned that, if she is sentenced to a prolonged period of incarceration, her medical treatment may be limited depending on where she is placed. In particular, she fears being denied her preferred forms of treatment and experiencing delays in receiving necessary care. Since her arrest, Ms. Villalobos has lost a significant amount of weight, although she has begun to regain some of it since her transfer to Yakima. The prospect of spending an extended period in federal custody while continuing to experience chronic pain and unresolved medical concerns has caused her tremendous anxiety and distress.

A variance downward may be appropriate in light of a defendant's unique medical circumstances, even when the Bureau of Prisons is capable of providing medical care for the defendant. In *United States v. Poetz*, 582 F.3d 835 (7th Cir. 2009), despite having confirmed the Bureau of Prisons could treat the defendant's medical condition, the district court imposed a sentence—roughly half the low end of the applicable guideline range—based on the defendant's unique, interrelated medical issues including a recent history of stomach surgery. The 7th Circuit affirmed the downward variance.



Christine Bennett, Attorney at Law
719 Jadwin Richland WA 99352
509-378-6978

While this case was pending Ms. Villalobos was evaluated for mental health concerns by Dr. Lontz of Blue Mountain Psychology. He reported the following conclusions:

> Ms. Villalobos was subjected to various adverse childhood experiences (ACEs). Excessive corporal punishment and substance abuse by her father created a lot of volatility in the home from an early age. Protective attempts by this examinee's mother only furthermore placed Ms. Villalobos in harm's way as the family stayed where a cousin four years her senior perpetrated sexual molestation ages 5-8 years. While imprisoned, Ms. Villalobos will also require treatment for what is a *rather complicated* medical history. This examinee has been addicted to alcohol (and sometimes other substances) since at least 14-years-old. Furthermore, she has demonstrated a proclivity for obtaining alcohol even while incarcerated, so abstinence support would be prudent while she is imprisoned. Following release from prison, aftercare support (e.g., group therapy), combined with urinalyses or other *compliance screenings*, will be necessary to assure that this examinee has developed more effective coping mechanisms in the meantime. Repeated legal offenses (e.g., drug manufacturing and/or distribution since at least 29-years-old) also predicted concerning behaviors. Therefore, upon release from incarceration, it would be prudent to help this examinee complete a college degree and develop skills that will allow her to become gainfully employed. Ms. Villalobos demonstrated insight regarding the *longitudinal effects* of factors leading to current legal encumbrances (i.e., this examinee demonstrated insight about how ACEs→ early-on experimentation with drugs→ involvement in gang culture→ substance *dependence*→ criminal activity, including manufacturing and distributing illicit substances to provide income as well as a way to continue using them→ additional social problems→ lack of opportunity for legitimate work opportunities, and so on).

Exhibit C, *Medical Records*

He recommends that Ms. Villalobos engage in cognitive behavioral or other personal psychotherapy to address longstanding symptomatology of her mental health diagnoses.



Christine Bennett, Attorney at Law
719 Jadwin Richland WA 99352
509-378-6978

At the Yakima County Jail, Ms. Villalobos has been offered mental health treatment and she is fully engaged in those sessions.

*Added 07/09/2026 01:54 PM PST by AYork Mental Health Professional*

***Client appeared fully engaged in the session, offering personal examples and taking part in the written work. Client appeared interested, maintaining eye contact and attention to the subject matter. Client was inquisitive and presented with a pleasant demeanor with relaxed tone and a broad affect.***

*Added 07/23/2026 03:40 PM PST by AYork Mental Health Professional*

***Client appeared fully engaged in the session, offering personal examples and taking part in the written work. Client appeared interested, maintaining eye contact and attention to the subject matter. Client was inquisitive and presented with a pleasant demeanor with relaxed tone and a broad affect.***

*Added 07/31/2026 02:18 PM PST by AYork Mental Health Professional*

***Client appeared fully engaged in the session, offering personal examples and taking part in the written work. Client appeared interested, maintaining eye contact and attention to the subject matter. Client was inquisitive and presented with a pleasant demeanor with relaxed tone and a broad affect.***

*Added 08/12/2026 10:54 AM PST by AYork Mental Health Professional*

***Client appeared fully engaged in the session, offering personal examples and taking part in the written work. Client appeared interested, maintaining eye contact and attention to the subject matter. Client was inquisitive and presented with a pleasant demeanor with relaxed tone and a broad affect.***



Christine Bennett, Attorney at Law
719 Jadwin Richland WA 99352
509-378-6978

Added 08/19/2026 03:43 PM PST by AYork Mental Health Professional

***Client appeared fully engaged in the session, offering personal examples and taking part in the written work. Client appeared interested, maintaining eye contact and attention to the subject matter. Client was inquisitive and presented with a pleasant demeanor with relaxed tone and a broad affect.***

Added 09/02/2026 03:45 PM PST by AYork Mental Health Professional

***Client appeared fully engaged in the session, offering personal examples and taking part in the written work. Client appeared interested, maintaining eye contact and attention to the subject matter. Client was inquisitive and presented with a pleasant demeanor with relaxed tone and a broad affect.***

Exhibit C, *Medical Records*

The need for mental health counseling may also support a downward variance. In *United States v. Myers*, 503 F.3d 676, 687 (8th Cir. 2007), the district court appropriately varied downward six offense levels after considering the defendant's mental health diagnoses. The court also took into account the defendant's acknowledgment of his impairments and his expressed desire to obtain treatment. Like the defendant in *Myers*, Ms. Villalobos recognizes that she needs mental health counseling and is willing to seek treatment. Her mental health needs and her desire to address them provide an additional basis for the Court to consider a downward variance.

These significant physical and mental health conditions, together with her extensive history of childhood trauma and substance abuse, provide important context for understanding Ms. Villalobos's life experience. Difficult personal circumstances can be



Christine Bennett, Attorney at Law
719 Jadwin Richland WA 99352
509-378-6978

considered in fashioning an appropriate sentence. *U.S. v. Patzer*, 548 F. Supp.2d 612 (N.D. Ill. 2008). In *Patzer*, the defendant faced a career-offender guideline range of 346 to 411 months' imprisonment for bank robbery and a related firearm offense. The district court imposed a sentence of thirteen years — nearly two decades below the low end of the applicable range — after considering the defendant's difficult childhood and the improper diagnosis and treatment of his attention deficit disorder. The court reasoned that a defendant's personal history, including circumstances largely outside his control, bore directly on the sentencing factors set forth in 18 U.S.C. § 3553(a) and justified a sentence well below the guideline range. This principle applies with equal force here. Ms. Villalobos's difficult personal circumstances likewise warrant consideration in fashioning a sentence sufficient, but not greater than necessary, to satisfy the purposes of § 3553(a).

**d. Avoid Unwarranted Sentence Disparities - 18 U.S. Code § 3553(a)(6) .**

The sentences imposed on her codefendants also support a sentence below the advisory guideline range pursuant to 18 U.S. Code § 3553 (a)(6). There are four codefendants in this case. Codefendant Cariveau (#2) received a sentence of time served, while Codefendant Garanzuay (#3) received a sentence of 12 months and one day.





Christine Bennett, Attorney at Law
719 Jadwin Richland WA 99352
509-378-6978

Codefendants Lee (#4) and Gutierrez (#5) have not yet been sentenced. In addition, two defendants in a related case received sentence of 12 months and a day and 24 months, respectively. [ECF No. 175 at ¶ ¶ 11, 12].

Ms. Villalobos recognizes that her criminal history, which includes a prior conviction for drug trafficking, may distinguish her to some extent from the other defendants depending on their unique criminal history. She acknowledges she is not aware of their respective criminal histories but notes that their below range sentences may demonstrate that a sentence below the guideline range would be fair for her as well.

Although her prior conviction for drug trafficking is significant, that conviction, acquired at age 30, is nearly two decades old. Ms. Villalobos has no other criminal history other than a misdemeanor liquor violation from when she was 21 years old. Ms. Villalobos is now 50 years old.

In light of these considerations, a sentence of 60 months adequately accounts for her individual circumstances while remaining consistent with the sentences imposed on similarly situated defendants. Such a sentence is substantial and would recognize Ms. Villalobos's unique history and characteristics, her timely acceptance of responsibility, the age of her prior conviction and extended periods of her life being crime free. Such a sentence would promote meaningful consistency with the sentences imposed on related cases and also account for her heightened role in the conspiracy.



Christine Bennett, Attorney at Law
719 Jadwin Richland WA 99352
509-378-6978

**4. Conclusion.**

A sentence of 60 months would be sufficient, but not greater than necessary, to comply with the goals of the sentencing guidelines set forth in 18 U.S. Code § 3553(a). Such as sentence appropriately accounts for the nature and circumstances of the offense, Ms. Villalobos's history and characteristics, and the need for the sentence imposed to provide her with needed medical care in the most effective manner. It would also avoid unwarranted sentencing disparities among similarly situated defendants. See 18 U.S.C. § 3553(a)(1), (2)(D), (6).

Given Ms. Villalobos's significant and ongoing medical needs, she also respectfully requests that the Court recommend placement at FMC Carswell or FCI Waseca, given the medical facilities and resources available at those institutions.

DATED this 9th day of September, 2026

Respectfully Submitted,

s/ Christine Bennett
Attorney for Defendant, WSBA #41305
719 Jadwin Richland, WA 99352
(509) 378-6978
christinebennettlaw@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2026, I electronically filed Defendant's Sentencing Memorandum with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: Rebecca Perez and Brandon Pang, Assistant United States Attorneys.

s/ Christine Bennett
Attorney for Defendant, WSBA #41305
719 Jadwin Richland, WA 99352
(509) 378-6978
christinebennettlaw@gmail.com